Commonwealth ex rel. Sleighter, Appellant, *v.* Banmiller.

Submitted November 13, 1957. Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

*Glenn Sleighter,* appellant, in propria persona.

*George C. Eppinger,* District Attorney, for appellee.

Opinion by Mr. Justice Cohen, March 17, 1958:

This appeal from the order of the Court of Common Pleas of Franklin County dismissing the relator's petition for a writ of habeas corpus is the sixth proceeding[1] taken by the petitioner who seeks release from im-

---

[1] Previously petitioner had applied to this Court for writ of habeas corpus (May, 1950). Pursuant to the policy later announced in *Commonwealth ex rel. Paylor v. Claudy,* 366 Pa. 282, 77 A. 2d 350 (1951), his rule was discharged. Review of our action was sought in the United States Supreme Court in April, 1951. That Court, however, denied certiorari. In May, 1957, petitioner made

prisonment imposed following a conviction for first degree murder, from which no appeal was taken.

In 1937 the petitioner was convicted of first degree murder in the death of a six year old girl who had been a foster child in the relator's home. The Commonwealth's evidence, based mainly upon the relator's confession, disclosed that the child had died as the result of a beating with a leather strap administered to her by the relator and his wife because the child had told falsehoods about school incidents. The jury returned a verdict of guilty of murder in the first degree and a sentence of life imprisonment was imposed. Although motions for a new trial and in arrest of judgment were filed, the motions were subsequently withdrawn, and no appeal was taken from the judgment of conviction. The failure to appeal in this case was perhaps unfortunate because the question whether the evidence was sufficient to have warranted the conviction of first degree murder, and whether statements made during the course of the trial to the effect that the child was sexually abused were so prejudicial as to have required the grant of a new trial, should have been determined. However, issues of trial error are not now before us. *Commonwealth ex rel. Lewis v. Ashe,* 335 Pa. 575, 7 A. 2d 296, *cert. denied,* 308 U. S. 596 (1939).

On June 15, 1957, the relator filed the present petition for a writ of habeas corpus and, after the court

application to the United States District Court for the Eastern District of Pennsylvania for a writ of habeas corpus. This petition was denied without opinion. On appeal the Court of Appeals for the Third Circuit held that they were unable properly to review the action of the district court in the absence of an accompanying opinion, and so vacated the order of the lower court and remanded the cause. 250 F. 2d 364 (Dec. 17, 1957). On June 15, 1957, relator filed his present petition for a writ of habeas corpus in the Court of Common Pleas of Franklin County and the appeal from the denial thereof was filed with this Court in September, 1957.

appointed counsel to represent relator in the matter, a full argument was held. From the denial of the petition, the relator has taken this appeal.[2]

The writ of habeas corpus is available to obtain discharge from imprisonment resulting from a criminal proceeding in which fundamental errors were committed or constitutional rights invaded so as to have made the proceeding a nullity and rendered the trial court without jurisdiction to impose sentence. *Commonwealth ex rel. Milewski v. Ashe,* 362 Pa. 48, 66 A. 2d 281 (1949).

To meet these requirements, Sleighter alleges that he was unconstitutionally denied due process of law at his trial because (1) his involuntary confession was received in evidence, (2) mob hysteria influenced the court and the jury, and (3) that he was denied the effective assistance of legal counsel. The relator also contends that he was denied the equal protection of the law by reason of the failure of the trial court to supply him with a transcript of the notes of testimony.

After careful consideration, we find that the petitioner's allegations are not meritorious, and the court below did not abuse its discretion in denying the writ.

The first contention of the petitioner is that his written confession of the killing of the child was extracted from him as the result of police pressure and promises, that the confession was subsequently altered without his knowledge, and that therefore its introduction in evidence at the trial violated the Fourteenth Amendment to the Constitution of the United States. This argument was incorporated in the petitioner's defense at the trial, and although extensively explored, was unsupported by any evidence whatever showing

---

[2] The appeal was properly taken to this Court. Act of May 25, 1951, P. L. 415, §7, 12 P.S. §1907.

that the confession was involuntary or unauthorizedly altered.

The trial judge, in his charge to the jury, discussed thoroughly the law with regard to the admissibility of confessions, and properly left with them the determination whether, in light of all the evidence, the statements were given *voluntarily* and without *inducements*. We conclude from our independent review of the undisputed facts in the record that the rejection by both the trial court and jury of this defense was justified, and its subsequent rejection by the court below, before whom the contention was presented in detail, was therefore manifestly proper.

Furthermore, petitioner himself confirmed the *correctness* of the contents of his confession when in his sworn application to the Board of Pardons for commutation, he admitted its text to be an accurate statement "of all the facts in connection with the death."

It is true that the relator's confession was obtained while he was in custody. While there is no question but that the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States "bars police procedure which violates the basic notions of our accusatorial mode of prosecuting crime," *Watts v. Indiana*, 338 U. S. 49, 55 (1949), and interdicts the admission in evidence of a confession made by a defendant while in police custody if it results from police pressure or inducement, *Fikes v. Alabama*, 352 U. S. 191 (1957) ; *Watts v. Indiana*, 338 U. S. 49 (1949) ; *Harris v. South Carolina*, 338 U. S. 68 (1949) ; *Turner v. Pennsylvania*, 338 U. S. 62 (1949), a confession is not rendered constitutionally objectionable, and therefore inadmissible, by reason of being made by an accused while detained, unless the detention induced the confession. *Stein v. New York*, 346 U. S. 156 (1953) ; *Commonwealth v. Agoston*, 364 Pa. 464, 479, 483, 72

A. 2d 575, *cert. denied,* 340 U. S. 844 (1950). The recent decision of the United States Supreme Court in *Mallory v. United States,* 354 U. S. 449 (1957) is not to the contrary. That case held that a delay in arraignment in contravention of an express legal requirement, rendered a confession inadmissible as a matter of law and voided a conviction based thereon. The *Mallory* case, (as were its predecessors, *Upshaw v. United States,* 335 U. S. 410 (1948) ; *McNabb v. United States,* 318 U. S. 332 (1943)), was based upon rule 5(a) of the Federal Rules of Criminal Procedure which requires an arresting officer to bring the suspect before a United States Commissioner "without unnecessary delay." The *Mallory* decision, then, does not rest upon constitutional grounds but upon a federal rule of evidence applied in criminal proceedings to enforce rule 5(a) and does not control the determination of the question in state courts. See *Gallegos v. Nebraska,* 342 U. S. 55 (1951).

Pennsylvania has no provision parallel with section 5(a) of the federal rules, consequently, the *Mallory* doctrine has no application to the present case.

Petitioner's second contention is that he was denied a fair trial because of mob hysteria which influenced the court and the jury. In the words of the petitioner: "The local prejudice, passion, and hysteria was so prevailing and strong against the petitioner that it was necessary to remove him from the Franklin County Jail to the Dauphin County Jail for his personal safety. . . . After the petitioner's commitment to the Franklin County Jail, a mob demonstration took place in front of the jail, with the object of taking the petitioner therefrom and lynching him. This mob dispersed only after the trial judge, . . . was compelled to address the mob assuring them that the petitioner's case 'would be tried fairly and that justice would be meted out in ac-

cordance with the verdict,' and after one of the leaders of the mob was escorted through the jail to assure them that petitioner was not there. This atmosphere of mob hysteria and domination continued until after the petitioner was convicted and sentenced to life imprisonment. Large crowds of milling, angry people of the local vicinage surrounded the court house during the trial and during the deliberation of the jury."

In order to prove that a fair trial has been denied it is not enough to show merely that the public was beset by hysteria or passion, it must be shown that the jury was influenced thereby. *Commonwealth v. Simmons,* 361 Pa. 391, 65 A. 2d 353, 396-397, *cert. denied,* 338 U. S. 862, *rehearing denied,* 338 U. S. 888 (1949) ; *Moore v. Dempsey,* 261 U. S. 86, 91 (1923). The petitioner has failed to satisfy this requirement. The record of the relator's trial indicates that a thorough examination of each juror was made on *voir dire,* and that both counsel for the Commonwealth and the defendant were satisfied that an unbiased, impartial and unprejudiced jury was chosen. There is no evidence to indicate that the trial was conducted under other than peaceable and orderly circumstances. In this respect, it is significant to note that the petitioner's counsel did not see fit to move for a change of venue provided by the Act of March 18, 1875, P. L. 30, §1, 19 P.S. §551, and Article III, section 23 of the Constitution of the Commonwealth of Pennsylvania.

Petitioner's third contention is that he was denied effective assistance of counsel in contravention of the Due Process Clause of the Fourteenth Amendment. He bases his allegation upon the following circumstances: that he was without counsel for three weeks after the date of his arrest during which time he was held without warrant and without preliminary hearing; that the court appointed counsel failed to move for a change

of venue; that counsel refused to call certain witnesses requested by the petitioner; that counsel refused to allow petitioner to testify in his own behalf; and finally that counsel unwisely withdrew the motion for a new trial without consent of the petitioner.

We quote with approval from the determination of this issue by the court below: "An examination of the trial record effectively refutes petitioner's position. The trial court . . . appointed one attorney for defendant on February 19, 1937, well over two months before the trial and appointed additional counsel on March 29, 1937, over one month before hand. These attorneys had ample time for careful preparation of the case. The energetic and thorough-going effort expended by them in behalf of petitioner stands out in bold relief to anyone who reads the trial record of 412 pages.

"Petitioner nowhere avers that he requested the appointment of counsel by the court at any time previous to the time of appointment or even that he had requested it at that time. The fact that the court did not appoint counsel between January 26, when defendant was first taken into custody, and February 19 equally supports the inference (a) that no application had been made by the defendant; (b) that defendant had made no showing that he, a farmer and coal trucker, was unable financially to employ his own counsel. . . .

"The diligence and vigor of defendant's counsel is further evident . . . [from] an examination of the record from . . . [the time] when counsel petitioned the Court for a bill of particulars, until the end of the trial when counsel requested that the jury be polled and filed written motions for a new trial and in arrest of judgment. . . ."

As the judge also pointed out: "The defense elected, on grounds which to them seemed convincing, not to

have the defendant testify nor to present any other evidence. A number of potentialities of the utmost gravity were obviously present in their deliberations. We cannot properly now retrace their reasoning nor review their calculations. One of the most crucial tasks that ever confronts a lawyer is that of assisting his client in a criminal case, especially where the charge is murder, on the question whether or not to take the witness stand; whether or not to present a defense otherwise. . . . On the record in the case we find no proper reason to restudy here all the considerations which must have been before defendant and his counsel when they selected their strategy and weighed presentation of evidence at the trial.

". . . We are entitled to assume that if such a determination was made by counsel, it was done after careful weighing of the factors pro and contra which would influence the decision of counsel whether to call any particular witness. In fine, counsel decided against presenting any evidence, and we cannot now consider de novo the merits of that decision." See also *Commonwealth ex rel. Garrison v. Burke*, 378 Pa. 344, 106 A. 2d 587 (1954).

It is also inappropriate at this late date to reconsider the decision of petitioner's counsel to withdraw their motions for a new trial and in arrest of judgment as petitioner suggests that we do. Counsel had to consider in light of the circumstances appearing at the time of trial that if their motions were granted, and the petitioners retried and again convicted, they would expose him to the risk of receiving the death penalty.

Likewise, the decision of counsel not to move for a change of venue cannot now be questioned successfully since there is no evidence to show that an unbiased jury was not selected or that the trial was not conducted in a calm and impartial manner.

The last ground upon which this appeal is taken is that the petitioner was deprived of his constitutional right to the equal protection of the law by reason of the failure of the trial court to supply him with a transcript of the notes of testimony. On January 21, 1939, 20 months after the trial, petitioner's attorneys petitioned the court for a copy of the trial testimony. Although an original transcript of the testimony was thereupon filed, no copies were made. Counsel again petitioned the court to obtain a duplicate transcript, which petition the court refused. Petitioner correctly points out that this ruling was erroneous in view of the provisions of the Act of May 1, 1907, P. L. 135, §2, as amended, 17 P.S. §1802, which requires that a defendant at his request be furnished with a copy of the notes of testimony. He suggests further that this ruling was fundamental error which denied him the equal protection of the law, citing *Griffin v. Illinois,* 351 U. S. 12 (1956). That case held that the denial of appellate review to a defendant in a criminal action because of his financial inability to purchase a transcript of the notes of testimony was a violation of the Fourteenth Amendment.

We cannot agree with the petitioner's position. The refusal of the trial court to comply with the Pennsylvania statute was not *fundamental* error and petitioner's constitutional rights were not infringed thereby, because the defendant's failure to obtain appellate review cannot be attributed to the lack of a trial transcript.

Under the Act of May 19, 1897, P. L. 67, as amended, 12 P.S. §1136, appeals from the Court of Oyer and Terminer must be taken within 45 days from the entry of sentence. Defendant's application for a transcript was made long after the time when there was any ave-

nue open to him for obtaining a review of his conviction.[3]

We conclude from a review of the entire record before us that the order of the court below dismissing relator's petition for a writ of habeas corpus should be affirmed.

Order affirmed.

---

[3] In point of fact, of course, petitioner through his counsel had withdrawn motions in arrest of judgment and for a new trial shortly after the conviction.