# Commonwealth ex rel. Dermendzin, Appellant, *v.* Myers.

608

Argued October 1, 1959. Before JONES, C. J., BELL, JONES, COHEN, BOK and McBRIDE, JJ.

*Charles N. Dermendzin,* appellant, in propria persona.

*Frank B. Warfel,* Assistant District Attorney, with him *Park H. Loose,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, December 30, 1959:

This appeal from an order of the court below, dismissing the relator's petition for a writ of habeas corpus, questions whether the relator was duly sentenced for the crime whereof he was convicted. A writ of habeas corpus is the appropriate means for testing the legality of a sentence imposed upon a convict. See *Halderman's Case,* 53 Pa. Superior Ct. 554; *Commonwealth ex rel. Flory v. Ashe,* 132 Pa. Superior Ct. 405, 1 A. 2d 685.

On March 27, 1954, Charles N. Dermendzin, the relator, was convicted of voluntary manslaughter in the Court of Oyer and Terminer of Blair County. The maximum prison sentence imposable in this State for a conviction of such offense is 12 years. Act of June 24, 1939, P. L. 872, §703 (18 PS §4703). However, Dermendzin was sentenced by the court under the provisions of the Habitual Criminal Act of June 24, 1939, P. L. 872, §1108 (18 PS §5108), to an enlarged term of from 12 to 24 years in the Western State Penitentiary. Several years later, as relator, he filed a petition in the Court of Common Pleas of Blair County for a writ of habeas corpus alleging that he had been sentenced as a second offender without due process of law. The court issued a rule upon the warden of the State penitentiary, the place of restraint, calling upon him to show cause why a writ should not issue as prayed for. Answer was filed and a hearing had at which the relator, though not personally present, was represented by counsel. The court ultimately discharged the rule and denied the relator a writ of habeas corpus in an order which the relator appealed to the Superior Court. The jurisdiction of the appeal being in this court, the Superior Court duly certified it to us: Act of May 25, 1951, P. L. 415, §7 (12 PS §1907).

The Habitual Criminal Act provides as follows: "(a) Whoever after having been convicted within or without this Commonwealth of the crime . . . of . . . voluntary manslaughter . . . [or] burglary . . . may, upon conviction of any of such crimes for a second offense committed within five (5) years after the first offense . . . be sentenced to imprisonment for a term, the maximum of which shall not be more than twice the longest term prescribed upon a first conviction of the crime in question. . . . (e) A person need not be formally indicted and convicted as a previous offender in order to be sentenced under this section."

The relator had been priorly convicted in the Court of Oyer and Terminer of Blair County on March 6, 1953, on indictments charging burglary, larceny and receiving stolen goods, for offenses committed on December 12, 1952, which was within five years of the commission of the homicide for which he was convicted, as above stated, of voluntary manslaughter on March 27, 1954. The relator, in his petition for a writ of habeas corpus, admits the fact of his prior conviction of burglary, etc., on March 6, 1953. He insists, however, that he was not legally sentenced as a second offender because he had not been, prior to or at the time of his sentencing on the voluntary manslaughter conviction, notified of his alleged right under the Habitual Criminal Act to a hearing on the fact of the previous conviction.

Although by the terms of the Habitual Criminal Act no formal indictment or conviction of the fact of previous offense is necessary before sentence can be imposed thereunder on a second offender, it has been said that "The defendant has a right to know at the time of his sentence that it has been increased because of his prior conviction . . .". *Commonwealth ex rel. Arnold v. Ashe,* 156 Pa. Superior Ct. 451, 456, 40 A. 2d 875. The foregoing statement obviously did not con-

template a hearing but merely that the defendant be informed that he was being sentenced as a second offender.

The question which this appeal presents is whether informing a defendant at the time of his sentencing that he is being sentenced to an enlarged term of imprisonment under the Habitual Criminal Act, without also informing him that he has a right to a hearing on the issue of recidivism and time to prepare for such a hearing, is sufficient to satisfy the requirements of procedural due process.

In *United States ex rel. Collins v. Claudy,* 204 F. 2d 624, 628 (C.A. 3d), Judge HASTIE, speaking for the court on the point now before us for consideration, said: "Such post-conviction consideration of the question of recidivism serves two important purposes. It is as essential to the establishment of a legal basis for any enhanced sentence as proof of premeditation is in many states for capital punishment for murder. The crime 'is considered to be an aggravated offense because a repetitive one.' See Gryger v. Burke, supra [334 U. S. 728; 68 S. Ct. 1256; 92 L. Ed. 1683], 334 U. S. at page 732, 68 S. Ct. at page 1258. At the same time it also enables the court to employ informed judgment in the exercise of its far reaching discretion whether to impose additional punishment, and how much, on account of such prior conviction and attendant circumstances as the inquiry may reveal. Essential fairness dictates that the disposition of any issue thus determinative of the legal power of the tribunal and thereafter influential upon its discretion to punish a defendant must be after some notice to the accused that the issue is before the court followed by an opportunity to be heard. We can not see that this requirement is less important at that stage of the proceedings which provides essential justification for the imposition of the second half of a twenty year sentence than

for the proceedings which made the first half lawful. Moreover, we can not see how any subsequent showing that the accused did not have a good defense can excuse the failure to found one part of the sentence more than the other upon the normally prerequisite procedure of notice and hearing."

In the instant case the enlarged sentence complained of could not, of course, have been imposed on the basis of the conviction of voluntary manslaughter alone. There is still a further issue. Additional facts had to be determined by collateral inquiry.

The intent of the Habitual Criminal Act is not to enlarge the sentence of all those who have committed two or more of the Act's enumerated crimes within the preceding five-year period. The Act provides that a second offender's sentence *may* be increased and not that it *must* be increased. The sentencing judge thus has a discretion to exercise in each case in determining whether the recidivist should receive an enlarged sentence pursuant to the Act, and, if so, just how much of an increase in sentence is justified.

The procedure followed by the sentencing judge in the instant case of informing the defendant only that he was being sentenced for the voluntary manslaughter conviction and that the court had concluded that he should also suffer an additional 12 years in prison because he was a previous offender, does not conform to the discretionary role imposed upon the court by the Act. It is not unreasonable to conclude that the sentencing judge did not exercise any discretion at all in the matter of an enlarged sentence or its extent. Since the court apparently conducted no inquiry of any kind into the matter of recidivism, it would seem that the word *may* in the Act was misinterpreted as meaning *must*.

When the relator was not accorded a hearing on the question of his previous conviction, he was effec-

tively denied any opportunity to explain to the sentencing court the facts and circumstances attending his prior indictment and conviction or to show any attendant extenuating circumstances. What the relator might have shown at a hearing on the question of prior conviction, if he had been given the chance so to do, might possibly have inclined the sentencing judge not to impose the maximum increase in sentence, which the Act allows, or, perhaps, not to impose an increased sentence at all. Instead, the relator was sentenced to 12 additional years in prison without any sort of a hearing on the prior offense. Indeed, it was not until the day of his sentencing that he was informed that he was in jeopardy of receiving an additional prison sentence to the maximum of the 12-year term provided by statute for conviction of voluntary manslaughter.

*United States ex rel. Collins v. Claudy,* supra, held that failure of the court, before sentencing, to inform the defendant that he is about to be sentenced as a prior offender, denies him due process of law. We hold accordingly that merely informing the defendant in the instant case at the time of his sentencing that he is being sentenced as a prior offender without also according him a right to a hearing and adequate time to prepare therefor, violates procedural due process. In other words, a defendant's sentence may not be increased on the ground that he is a second offender without a supporting judicial determination of the issue of recidivism after the defendant has been informed of and had an opportunity to be heard in the premises.

It is true that the Habitual Criminal Act does not in terms provide for either notice or hearing before sentence is imposed on a defendant as a second offender. Subsection (d) of the Act provides that if a defendant is charged with being a *fourth* offender, he is entitled to be served with a copy of a complaint at least 30

days before the proceedings are had pursuant to the charge of multiple offending and he is entitled to a jury trial of the issue. While the Act does not expressly provide for similar procedure before the sentencing of a second or third-time offender, we are constrained, in order not to involve a constitutional question of want of due process, to construe the Habitual Criminal Act as impliedly intended to require adequate notice and hearing on the issue of recidivism before an enlarged term of imprisonment can be imposed on a second offender. Under well established rules of construction, it is our duty to interpret a statute so as to render it constitutional if it is at all reasonable so to do. The procedure thus prescribed, which is manifestly the fairer and sounder course for sentencing under the Habitual Criminal Act in most instances, can be pursued by trial courts without any undue burden.

The only question remaining is whether the defendant waived his right to a hearing on the question of his previous conviction. When he appeared for sentencing before the Court of Oyer and Terminer of Blair County on April 5, 1954, he was accompanied by his attorney. At that time the District Attorney made a statement to the court and urged that the defendant's sentence for his conviction of voluntary manslaughter be doubled under the Habitual Criminal Act because of his previous conviction for burglary, etc. Later, the trial judge, while passing sentence, declared that he was imposing a double penalty on the defendant under the Habitual Criminal Act. At no time did either the relator or his counsel object to the procedure or demand a hearing on the issue of his prior conviction. Nor did the judge inform him that he had a right to such a hearing. The relator asserts, however, that he had no knowledge of any such right and, absent evidence to the contrary, we may not properly assume the fact to be otherwise. Either the defendant's counsel

did not have such knowledge or, having it, he failed to communicate it to his client. But, obviously, the relator cannot be held to knowledge of what he was not informed. He cannot, therefore, be justly held to have waived his right to a hearing when he did not know that he had any such right. It would violate traditional concepts of even-handed justice to hold that the defendant's counsel, without his client's approval, could waive for him such a fundamental right.

The relator is not, however, entitled to be released upon a writ of habeas corpus since he is still under restraint by virtue of the portion of the sentence imposed upon him which did not violate the law, i.e., the 12-year sentence for voluntary manslaughter. But, since he was sentenced to a term of 12 additional years in the Western State Penitentiary, under the Habitual Criminal Act, without a hearing on the question of his previous conviction, we shall remand the record to the court below for a resentencing of the relator according to law as herein enunciated. *Commonwealth ex rel. Flory v. Ashe,* supra.

It is ordered that the record be remanded to the Court of Common Pleas of Blair County with directions that the Court of Oyer and Terminer of that County, by appropriate process, bring the relator before it for resentencing in accordance with law, taking into consideration, and allowing credit for, the time the relator has already served for his conviction of voluntary manslaughter.