## Commonwealth v. Martin

*Fred T. Cadmus,* for petitioner.
*Norman J. Pine,* for Commonwealth.

GAWTHROP, P. J., January 16, 1962.—Defendant, Arthur E. Martin, was held without bail on two

charges of forcible rape allegedly committed upon the same victim at times about one hour apart on the same night. Upon order entered in October, 1961, on application of defense counsel, Dr. E. Lee Porter was authorized to and did examine defendant at the prison at defendant's expense and reported thereon to the defense. Thereafter, on November 3, 1961, on petition of defendant's mother filed under the Mental Health Act of June 12, 1951, P. L. 533, as amended, this court appointed Dr. E. Lee Porter and Dr. J. J. Klevan, two qualified physicians, both of whom had many times before acted in such capacity, to investigate the condition of the prisoner and report thereon to the court.

Pursuant to written waiver by defendant's wife, mother and counsel of all notices of time and place of examination of defendant and all other notices provided under the act, those physicians examined and investigated defendant at Chester County Farms Prison on November 8, 1961, and made written report to the court in compliance with said order. The report was approved and filed November 15, 1961, and contained their findings that defendant "is in fact mentally ill and is in such condition to make it necessary that he be cared for in a hospital for mental illnesses," and further that "in their opinion the said prisoner is of criminal tendency." On request of defendant's counsel and of his mother, the petitioner, a hearing was held in open court on December 1, 1961, at which testimony of defendant, his mother, his wife, and his sister was heard, as well as that of Dr. Porter and Dr. Klevan, the examining physicians. Thereafter this court, being satisfied of the propriety of so doing, entered an order of December 7, 1961, finding that the defendant is mentally ill and of criminal tendency and committing him to Farview State Hospital. Upon service of notice of appeal taken to the Superior Court

of Pennsylvania, this opinion is filed in compliance with rule 43 of that court.

From the evidence taken, we have no doubt that defendant is suffering from "mental illness" as defined in the Act of 1951, P. L. 533, article I, sec. 102 (11), as amended; 50 PS §107 (11). The evidence of defendant's mother and of both examining physicians amply supports that finding. Furthermore, the waiver of notice signed by defendant's counsel, his wife and by petitioner, his mother, states, inter alia, that they believe he is "mentally ill or defective and does require care and treatment as soon as possible and . . . unqualifiedly agree and consent to his commitment as a mentally ill or mentally defective person by the court . . . should said court be satisfied" that he is mentally ill or mentally defective, and that "such commitment would be to the best health and welfare" of defendant, the "place of commitment to be entirely at the discretion of said court." We do not, of course, consider that the reference to the place of commitment authorizes commitment at Farview State Hospital, unless the evidence has established that defendant is of criminal tendency.

The sole problem involved in the proceeding was thus whether or not defendant is of "criminal tendency" as defined in article I, sec. 102(4) of the Act, supra, i.e., whether he has a "tendency to repeat offenses against the law or to perpetrate new offenses, as shown by repeated convictions for such offenses or tendency to habitual delinquency." We are satisfied that the evidence fully supports our finding that defendant has a tendency to repeat offenses against the law or to perpetrate new offenses as shown by a tendency to habitual delinquency.

In 1953, defendant was committed to the Pennsylvania Industrial School at White Hill as a juvenile offender on charges of burglary and larceny, and re-

mained there 13 months. Thereafter, at Malvern in this county, he was charged before a Justice of the Peace with disorderly conduct by a woman who, he says, "thought I was being improper with her." His employer paid his $25 fine for him when defendant refused to do so.

On September 26, 1960, defendant was tried before the writer of this opinion and a jury in the Court of Oyer and Terminer of this county on bill of indictment no. 251, January sessions, 1960, on a charge of assault with intent to ravish allegedly committed in early 1960. A mistrial resulted when a state police officer collapsed on the witness stand from a heart attack suffered while testifying. That case has not been retried because the trooper's physician has forbidden him for medical reasons to appear in court as a witness. The offenses of which he now stands indicted are in the same pattern as, but more serious than, the earlier disorderly conduct and felonious assault charges.

It is interesting to note that Dr. Porter, first retained on behalf of defendant and later appointed by the court in this proceeding, joined in the written report made to the court herein that defendant is of criminal tendency, but later undertook in a measure to recant that opinion on the witness stand. We make no comment on his reason for so doing. But, in any event, in answer to the court's question, "Is he likely to act in a certain manner?", he said: "It might occur again in the next four years," and further expressed the opinion that: "Based on the fact that I am advised that he has in the past followed certain courses I think it is likely that these courses will continue until something is done to change it. . . . I think his course of conduct is established by his past."

Dr. Porter testified defendant admitted to him the rape charge on the latter examination but denied the earlier felonious assault. He further stated he believed

defendant is of criminal tendency on the basis of his four arrests, and then qualified that opinion by saying it was based on the assumption of defendant's guilt of those offenses. The statutory definition of criminal tendency is broader than Dr. Porter's approach which does not include a tendency to habitual delinquency.

Dr. Klevan was unequivocal in expressing the opinion that defendant is of criminal tendency. He based his opinion not only upon the examination made with Dr. Porter, but also on his own observations of defendant as prison physician made about three times a week between defendant's commitment to prison following arrest and the hearing date. Furthermore, Dr. Kleven explicitly stated that, for that reason, defendant should not be institutionalized in any place having an "open door policy", as has Embreeville State Hospital, where inmates may go about at large.

As in Commonwealth v. Bechtel, 384 Pa. 184, defendant and his mother, the petitioner, do not question the court's finding of defendant's mental illness requiring treatment in a hospital for such illnesses, but object to the place of commitment, Farview State Hospital. The opinions and report of the examining physicians are advisory only and not mandatory on this court, which must itself determine whether defendant is mentally ill and of criminal tendency: Bechtel case, supra; Commonwealth v. Patskin, 375 Pa. 368. A proceeding under the act is both for the benefit of defendant and for protection of society from those who are mentally ill and have criminal tendencies: Commonwealth v. Cook, 390 Pa. 516; Bechtel case, supra. Tendency to habitual delinquency amounts to criminal tendency under the act: Commonwealth v. Baldassare, 399 Pa. 411, 414. We had no difficulty on this record in finding that defendant has a tendency to repeat offenses against the law or to perpetrate new offenses, as shown by tendency to habitual delinquency and,

therefore, is of criminal tendency. Consequently, for his own benefit and for protection of the public, we committed him to Farview State Hospital.