Commonwealth ex rel. Wolenski, Appellant, *v.* Shovlin.

Submitted April 21, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Henry V. Wolenski,* appellant, in propria persona.

*Ralph B. D'Iorio,* Assistant District Attorney, *Domenic D. Jerome,* First Assistant District Attorney, and *Jacques H. Fox,* District Attorney, for appellee.

OPINION BY MR. JUSTICE JONES, September 29, 1965:

On December 10, 1953, Henry V. Wolenski (Wolenski), before a Delaware County magistrate, was charged with having, on December 9, 1953, committed the murder of one Edward Gack. Shortly thereafter, Wolenski was committed to the Delaware County prison. The warden of that prison petitioned the Court of Common Pleas of Delaware County for the appointment of a commission to determine the mental ability of Wolenski to stand trial and the court appointed such a commission. The commission examined Wolenski and reported to the court that Wolenski was then insane and

of criminal tendency and recommended that he be committed to a mental institution. The court, acting upon the recommendation of the commission[1] and in the exercise of its own discretion, on December 21, 1953, committed Wolenski to Farview State Hospital where he has remained until the present time. Subsequent to his commitment Wolenski was indicted for murder by a Delaware County grand jury but, by reason of his mental condition, has never been brought to trial.

In recent years Wolenski has filed, both in the federal and state courts, various petitions.[2]

In 1964 Wolenski petitioned the Court of Common Pleas of Delaware County for the issuance of a writ of habeas corpus. That court then directed, under §6 of The Mental Health Act of 1951, as amended (Act of June 12, 1951, P. L. 533, §801, as amended, 50 P.S.

---

[1] Such a recommendation is simply advisory and it is the sole responsibility of the court to determine whether the person is mentally ill and of criminal tendency: *Com. v. Baldassarre*, 399 Pa. 411, 160 A. 2d 461; *Com. v. Novak*, 395 Pa. 199, 150 A. 2d 102.

[2] On June 11, 1962, Wolenski, averring he was not mentally ill and was able to stand trial, petitioned the Court of Common Pleas of Delaware County for the issuance of a writ of habeas corpus. That court refused issuance of the writ and its action was affirmed by the Superior Court (*Commonwealth ex rel. Wolenski v. Shovlin*, 199 Pa. Superior Ct. 470, 186 A. 2d 261) and our Court refused an allocatur. In the United States Court for the Middle District of Pennsylvania, Wolenski has also filed petitions: (a) a petition to compel the Delaware County Orphans' Court to decide Wolenski's petition in that court for the removal of the guardian of his estate; that petition the United States District Court denied and its denial was affirmed by the United States Court of Appeals (CA 3); (b) a petition—treated as a habeas corpus petition—seeking release from Farview Hospital on the grounds of the invalidity of his original commitment and that he was presently mentally competent; that petition was denied on the grounds Wolenski had not exhausted his state remedies, particularly under a recent amendment of The Mental Health Act of 1951 (Act of June 12, 1951, P. L. 533, §604, as amended by the Act of August 14, 1963, P. L. 895, §4).

§1481(8)), an examination of Wolenski's mental condition by a qualified physician not associated with the Department of Public Welfare[3] and directed such examination be made by Dr. Morton Herskowitz, a qualified psychiatrist. Dr. Herskowitz examined Wolenski and made a written report to the court on August 26, 1964. In that report Dr. Herskowitz stated, inter alia: "This patient is an acutely disturbed individual who is overwhelmed by his environment and tends to become depressed. His attention is limited and he often goes off into irrelevancies. Perception is very narrow and has room for little else than the products of his delusion. He is litigious and would sue those associated with his murder victim because of their involvement in the plot against him.

"His account is replete with retrospective falsification, ideas of reference and paranoid pseudologic. He committed murder (for which he has no remorse) because the victim's power was too great, i.e. the murder was an act for society. All girls on dates were plants and frame-ups, etc.

"His judgment is so poor that he fails to recognize that his parents *are* his parents and sometimes assumes that he is somewhere else than at Farview State Hospital.

"His agitation is revealed by his demeanor and his flow of speech which sometimes approaches gibberish.

---

[3] The statute provides for a request by the patient in the mental institution—made no sooner than six months after the patient's admission or no sooner than one year after a previous examination—to the Commissioner of Mental Health for an examination. Wolenski made no such request. However, the court itself arranged for the type of examination provided by the statute. It is to be noted that, although Wolenski's petition is labeled a habeas corpus petition, we have treated his petition, as did the court below, as under The Mental Health Act, supra, and applied the substantive law suitable thereto.

"No one or nothing in his environment escapes implication in his paranoid system. His affect is inappropriate and it is interesting to note that he has projected this symptom onto his murder victim and adduces it as one of the reasons he killed him.

"There is no capacity in this patient for any kind of realistic social relationship." Dr. Herskowitz concluded that Wolenski was suffering from an "acute paranoid schizophrenic reaction" and indicated that the prognosis was poor.

On December 3, 1964, Dr. J. P. Shovlin, Superintendent of Farview Hospital, submitted a letter to the court stating, inter alia, that the medical staff of the Hospital agreed with Dr. Herskowitz' report and findings and that it was the opinion of the medical staff that Wolenski "does not now have the capacity to conduct the criminal proceedings against him in a meaningful manner."

The court below dismissed the petition for the writ without a hearing. Wolenski has appealed from that order to our Court.[4]

Although Wolenski's petition—self prepared—is somewhat confusing, the real thrust of his contention on appeal is that he is mentally able to stand trial and is entitled under the Constitution to a trial on the issue of his mental capacity and at such trial he has a constitutional right to be represented by counsel.

On August 14, 1963, the legislature amended The Mental Health Act by providing (50 P.S. §1304(a)):

---

[4] The principal basis of the habeas corpus petition was that Wolenski was mentally able to stand· trial for *murder*. The appeal therefore, is properly before our Court: Act of May 25, 1951, P. L. 415, §7, 12 P.S. §1907; *Commonwealth ex rel. Sleighter v. Banmiller*, 392 Pa. 133, 136, 139 A. 2d 918; *Commonwealth ex rel. Dermendzin v. Myers*, 397 Pa. 607, 609, 156 A. 2d 804. Cf. *Commonwealth ex rel. Wolenski v. Shovlin*, 199 Pa. Superior Ct. 470, 186 A. 2d 261, where the question was not raised.

(a) a patient in a mental institution may petition for discharge on the ground his continued hospitalization is not warranted by reason of mental illness:[5] (b) the petition must be written, sworn to or affirmed, and accompanied by an affidavit of a qualified physician that the patient is not mentally ill within the statutory definition. Upon receipt of the petition, the court[6] "shall conduct a hearing to determine the question of the patient's mental illness, . . ." at which hearing the "burden of proof shall rest upon the persons responsible for the patient's continued hospitalization". After the hearing, the court may dismiss the petition or make any appropriate order including an order in "the case of a patient who has been charged with a crime for which he has not been tried, that he be held for disposition of the charges against him."

An examination of §§4 (50 P.S. §1304(a)) and 6 (50 P.S. §1481(8)) of the amendment of August 14, 1963, to The Mental Health Act of 1951, supra, would indicate that §6 enables the mental hospital patient, through a request to the Commissioner of Mental Health, to secure the services of an independent qualified physician, who would be available to make the necessary affidavit required under §4.

In the case at bar, Wolenski made no request under §6 nor did he follow the statutory requirements of §4.

---

[5] "Mental illness" means "an illness which so lessens the capacity of a person to use his customary self-control, judgment and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under care": The Mental Health Act of 1951, supra, §102, as amended, 50 P.S. §1072. Mental illness includes abnormalities which do not come within the strict connotation of the term "legal insanity": *Commonwealth v. Moon*, 383 Pa. 18, 117 A. 2d 96; *Commonwealth ex rel. Johnson v. Shovlin*, 201 Pa. Superior Ct. 331, 191 A. 2d 914.

[6] The "court" may be either the "court" which committed the patient or, upon transfer by such "court", the "court of common pleas of the county where the patient is detained."

Instead, Wolenski proceeded by a writ of habeas corpus to secure his discharge from the mental hospital. The statutory mandate for a hearing to determine the question of the mental condition of a patient occupying Wolenski's status is dependent on three factors: (a) the *request* for an examination by an independent physician which request, subject to the time limitations of the statute, must be granted; (b) an *examination;* (c) after examination, an *opinion* in affidavit form, by the physician, *that the patient is not mentally ill.* Once these requirements have been satisfied, the court *must* hold a hearing and, at such hearing, those responsible for the patient's continued hospitalization have the burden of proving the patient is mentally ill. Wolenski proceeded outside the statute and, under the circumstances, is not entitled, therefore, to a hearing.

However, we are fully cognizant of the fact that Wolenski, unversed in the law, was probably ignorant of the statute and its requirements. To meet such a situation the legislature wisely provided that the initiation of proceedings under the statute could be by a "person acting on [the patient's] behalf." In order that full justice might be done we suggest to the court that, in another proceeding under The Mental Health Act, supra, some person be appointed to act on Wolenski's behalf and, if such person can secure a certification by a qualified physician that Wolenski is not now mentally ill, then a hearing should be held to determine Wolenski's mental condition.

Under the factual posture of this case, the court below properly denied the habeas corpus petition.

Order affirmed.

———

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I concur in the result. Petitioner was examined by an independent physician, Dr. Morton Herskowitz. Dr. Herskowitz's opinion demonstrates that Wolenski is

too mentally ill to be released from Farview, let alone to be tried for murder, and the doctor's opinion was approved by the medical staff of Farview Hospital.

Wolenski's petition for a writ of habeas corpus should be dismissed, not only under the law as the majority Opinion points out, but also for the protection of both the petitioner and society, and in the interest of Justice for all.