Commonwealth *v.* Ballem, Appellant.

Argued November 11, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

628

*William H. Turner,* for appellant.

*Paul R. Sand,* Assistant District Attorney, with him *Ernest L. Green,* Assistant District Attorney, and *Raymond R. Start,* District Attorney, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 17, 1958:

On April 29, 1954 the appellant, Francis X. Ballem, was arrested and charged with murder. The court appointed counsel for the defendant, who on September 10, 1954 petitioned the court for the appointment of a commission to inquire into the mental condition of the defendant pursuant to The Mental Health Act of June 12, 1951, P. L. 533, as amended by the Act of January 14, 1952, P. L. 2053, 50 PS §1071 et seq. The petition was granted and the court appointed a commission. Following the report of such commission and in accordance with its conclusions, the court found that the defendant's mental condition was not such as to require commitment to a mental hospital. Thereupon the defendant was tried by a jury which, after a lengthy trial, rejected his pleas of insanity and self defense, and found him guilty of murder in the first degree, with the penalty fixed at death. Motions for new trial and in arrest of judgment were heard and dismissed, and on December 30, 1955 the court imposed the sentence prescribed by law. The judgment of sentence of death was appealed to this Court and affirmed: *Common-*

*wealth v. Ballem,* 386 Pa. 20, 123 A. 2d 728 (1956). Certiorari to the Supreme Court of the United States was denied. 352 U. S. 932, 77 S. Ct. 235. Application was then made to the State Board of Pardons for commutation of sentence. This application was argued before the Board on February 20, 1957 and its disposition is still pending.

On February 22, 1957 counsel for appellant petitioned the court below for the commitment of the appellant to a hospital for mental illnesses, averring that the appellant was believed to be insane within the meaning of that term as defined by Section 344 of The Mental Health Act of 1951, supra, *as amended by the Act of May 31, 1956, P. L. 1897.* The amendment of 1956 provides for the commitment of "Any person whose penalty for crime has been fixed at death by a court or jury, or who has been sentenced to death, and it shall appear that such person is insane and such insanity shall have occurred since the penalty was fixed or sentence imposed. The term 'insanity,' as used in this clause, . . . shall mean that such person does not have capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, to understand the nature of the punishment to be inflicted upon him, and to confer with his counsel with reference thereto." The court ordered a stay of proceedings to prevent execution under warrant issued by the Governor of the Commonwealth, fixing the time of execution for the week commencing February 25, 1957, and on March 5, 1957 the court appointed an attorney, Charles H. Heidmann, Esquire, and two psychiatrists, Dr. Herman D. Staples and Dr. Harvey Bartle, Jr., as a commission to investigate the condition of the defendant and make report thereof to the court. The commission held hearings at which statements of counsel were presented, the

testimony of witnesses was taken, certain documentary evidence, principally letters written by the defendant, was received, and the defendant himself was examined. Thereafter the commission made two reports to the court, one submitted by Mr. Heidmann and Dr. Bartle, Jr. as a majority opinion concluding that the appellant was not insane under the definition of "insanity" contained in the 1956 amendment of the Mental Health Act of 1951, and the other by Dr. Staples as a minority opinion concluding that the defendant was insane under such definition.

On May 15, 1957 the court below, with President Judge SWENEY, and Judges TOAL and BRETHERICK present, held a hearing in chambers during which members of the court as well as counsel for the defendant and the Commonwealth questioned the members of the commission after they were duly sworn with respect to their reports. On June 3, 1957 the court having found that the defendant was not insane under the applicable definition of "insanity" contained in the 1956 amendment of The Mental Health Act of 1951, made the following order:

"AND NOW, to wit, this 3rd day of June A. D. 1957, a petition for the commitment to a hospital for mental illnesses having been filed on behalf of the defendant, Francis X. Ballem, on March 5, 1957, and the Court having appointed a Commission to investigate the condition of the said Francis X. Ballem and to make a report thereof in writing to the Court, and specifically to inquire into and report upon the condition of the said Francis X. Ballem, a prisoner under sentence of death, alleged to be insane, within the meaning of that term as defined by the Mental Health Act of 1951, June 12, P. L. 533, section 344, as amended by the Act of 1951, January 14 (1952), P. L. 2053, section II, and the Act of 1956, May 31, P. L. 1897 (1955), section 1,

and to report to the Court its specific answers to the following questions.

"1. Whether the prisoner, Francis X. Ballem, is insane and does not have capacity to understand. the nature and object of the proceedings against him.

"2. Whether the prisoner, Francis X. Ballem, is insane and does not comprehend his own condition with reference to such proceedings.

"3. Whether the prisoner, Francis X. Ballem, is insane and does not understand the nature of the punishment to be inflicted upon him.

"4. Whether the prisoner, Francis X. Ballem, is insane and is unable to confer with his counsel with reference thereto.

"Further the said Commission having held hearings on March 14, 1957, and April 4, 1957, at which witnesses were heard including the defendant, Francis X. Ballem; and further the said Commission, after due deliberation, having made its reports in writing to the Court; and further, the Court having examined the findings and recommendations of the said Sanity Commission appointed in this case, and having considered the evidence together with additional relevant evidence heard by the Court May 15, 1957, and upon consideration of the entire record in the case, the Court finds that the defendant, Francis X. Ballem, is not insane as defined by the Mental Health Act of 1951 together with its various amendments and particularly the amendment of 1956, (May 31, P. L. 1897), (1955), section 1, for the following reasons:

"1. That Francis X. Ballem does have capacity to understand the nature and object of the proceedings against him, and;

"2. That the said Francis X. Ballem does comprehend his own condition with reference to such proceedings, and;

"3. That the said Francis X. Ballem, does understand the nature of the punishment to be inflicted upon him, and;

"4. That the said Francis X. Ballem, is able to confer with his counsel with reference thereto.

"It is further ORDERED and DIRECTED that a certified copy of this Order be duly served upon those persons in authority responsible by law for carrying out the sentence heretofore imposed by this Court."

Exceptions filed by the defendant to the foregoing order were dismissed by the following order from which the present appeal is taken:

"AND NOW, to wit, this 13th day of June A. D. 1957, exceptions to the Order of this Court in the above entitled matter dated June 3, 1957 having been filed on behalf of the defendant, Francis X. Ballem, and it appearing from the record, heretofore made, that the subject matter of said exceptions has been thoroughly and adequately considered by the Court and, that the Order heretofore made dated June 3, 1957 was the final Order of this Court, and further, that no useful purpose would be served by permitting the presentation of additional or further argument on the said exceptions filed herein: It is therefore ORDERED and DIRECTED that the said exceptions and each of them be and the same are hereby dismissed. And it further appearing that a petition praying this Court to grant a stay of all proceedings against the prisoner, Francis X. Ballem, has been filed of record dated June 7, 1957. Now, therefore, it is further ORDERED and DIRECTED that the prayer of the said petition for a stay of proceedings be and the same is hereby denied and a stay of proceedings is refused."

Appellant's contentions in this Court are: (1) the court below, and the sanity commission appointed by it, erred in refusing to admit in evidence and consider

in arriving at its conclusion, the entire record of the proceedings concerning appellant from the time of his arrest to his sentence; (2) the court below erred in failing to hold a hearing or argument on the report of the commission and in failing to give counsel for appellant opportunity to submit briefs and present oral argument before the court en banc in support of appellant's exceptions to the order of the court dated June 3, 1957, and (3) under all the evidence, the court below erred in failing to find appellant to be insane as defined by the 1956 amendment to Section 344 of The Mental Health Act of 1951 and order his commitment to a mental hospital as therein provided.

None of these contentions can be upheld. All of them stem from the false premise or assumption that the *inquiry* as to defendant's insanity as that term is defined under the 1956 amendment to The Mental Health Act of 1951 is of a juridical nature, that is, a proceeding similar to a trial at law. This is not true. In *Commonwealth v. Moon,* 386 Pa. 205, 125 A. 2d 594, we had occasion to pass upon the nature of an inquiry of this kind, and said, p. 216: ". . . The rights of the defendant as an offender on trial for an offense are not here involved. The inquiry is not an adversary proceeding to determine the guilt or innocence of the defendant but a collateral proceeding entirely apart therefrom to inform the conscience of the court as to the appellant's mental condition . . ." However, we have repeatedly held that the report or recommendation of the appointed commission is *advisory only,* the *ultimate determination* of the defendant's mental condition being for the court. As the Act of 1951 provides, the *court* must be "satisfied" that the defendant's mental condition is such that he should be committed to a mental institution. Of course the court may not act arbitrarily or capriciously, nor may the commission,

and the latter's advice having been sought, it must be considered by the court. However, there is nothing in the Act of 1951 or in any of our decisions construing it that prescribes the extent of the inquiry to be made by the commission or by the court.

In support of his first contention above stated that the court below and the commission erred in refusing to receive in evidence and consider the entire record of the proceeding concerning appellant from the time of his arrest to his sentence, appellant points to the case of *Commonwealth v. Gossard,* 385 Pa. 312, 123 A. 2d 258, at p. 318, where it was said: "It may be wise to add (a) that the test is the prisoner's condition at the time of the petition or commission; and (b) that all the evidence at the murder trial, as well as the prior life record of petitioner *may* be considered in determining whether he is mentally ill." (Emphasis supplied). It will be noted that this language does not *require* the consideration of the prior life record of the defendant but makes such consideration discretionary. Moreover the *Gossard* case was concerned with the test of mental illness prescribed under the Act of 1951 prior to the amendment of 1956 which, as we held in *Commonwealth v. Moon,* 383 Pa. 18, 27, 117 A. 2d 96, was whether the mental illness ". . . so lessens the capacity of a person to use his customary self-control, judgment and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under care. . . ." Such test might impel an examination of the prisoner's prior life record. However, the 1956 amendment reads in part as follows: "Any person whose penalty for crime has been fixed at death by a court or jury, or who has been sentenced to death, and it shall appear that such person is insane *and such insanity shall have occurred since the penalty was fixed or sentence imposed. . . .*" (Empha-

sis supplied). It was therefore, in the instant case incumbent upon the commission and the court to ascertain, first, whether the prisoner is insane under the definition contained in the 1956 amendment, and secondly, whether such insanity occurred after the defendant's conviction or sentence. When counsel for defendant offered the record of defendant's trial and all proceedings from the time of his arrest, the commission stated it would later decide whether it required the same and if it did, advise counsel. The commission found that it could reach a conclusion as to the defendant's sanity as defined in the 1956 amendment without having the defendant's record prior to his conviction and sentence. This was true of all the members of the commission—the two commissioners who wrote the majority report and equally true of the commissioner who wrote the minority report. The matter was entirely one within the discretion of the commission which was not required in its advisory capacity to extend or enlarge its inquiry beyond that which all of its members found sufficient for arriving at their respective conclusions.

The same considerations apply to appellant's second contention that the court should have permitted the presentation of argument in support of the exceptions filed by the defendant to the court's order of June 3, 1957. Summarized, the exceptions were to the failure (above discussed) of the commission to receive into evidence and consider the entire record of the proceedings against appellant from the time of his indictment to the time of his sentence; and that the failure to find appellant insane was an arbitrary and unreasonable abuse of the discretion of the court. Petitioner also excepted to the failure of the court to give counsel for appellant opportunity to take exception to the report filed by the majority of the commission. There is noth-

ing in the record to show that counsel for appellant applied to the court for permission or opportunity to take exception to the majority report of the commission, but even if such application had been made and refused, the court would have committed no error. There is nothing in The Mental Health Act of 1951, as amended, permitting exceptions to the commission's report which is purely advisory. Nor does the Act require any hearing by the court where it is satisfied that the defendant should not be committed to a mental institution; it is only when the court is satisfied that the defendant is a proper subject for commitment that a hearing is provided and may be demanded. See §345, 50 PS §1225.

Appellant's principal and basic contention is that the court below erred in failing to find appellant insane as defined by the 1956 amendment to The Mental Health Act and order his commitment. We have repeatedly held that upon appeal in a proceeding of this kind we will reverse only for an error of law or an abuse of discretion. See *Commonwealth v. Patskin,* 375 Pa. 368, 100 A. 2d 472; *Commonwealth v. Moon,* 383 Pa. 18, supra. It is apparent, as counsel for appellant assumes, that the court accepted the advisory opinion of the majority of the commission and adopted its findings. The role of the court is to "inform its conscience". The extent of its inquiry is neither statutorily nor judicially prescribed, save only that it may not act arbitrarily or capriciously. We have carefully reviewed the evidence received by the sanity commission and are of the opinion that the court was justified in adopting the majority report. No doubt because of the division of opinion on the part of the commission, the court, to better satisfy itself, held the additional hearing in chambers above referred to, at which the members of the commission were interrogated by

the members of the court and by counsel. The court had before it the transcript of the hearings before the commission which covered 168 typewritten pages, the majority report of the commission which reviewed and summarized the testimony before it, covering 25 pages, and the minority report covering 4 pages.

The burden of appellant's contention seems to be that all of the members of the commission were of the opinion that the appellant had a mental disease diagnosed as schizophrenia of the paranoid type, but, as appears from the majority report of the commission, this did not prevent appellant from having the capacity to understand the nature and object of the proceedings against him, to comprehend his own condition with reference thereto, to understand the nature of the punishment to be inflicted upon him, and to confer with his counsel with reference thereto, which was the test as to whether or not he should be committed as insane. However, counsel for appellant maintains that the majority of the commission erred in their failure to understand what counsel terms the key word of the section of the Act in question, namely "capacity", and to employ it in the proper manner. It is argued that the majority of the commission erroneously construed the word "capacity" to mean "ability" when purportedly there is a clear distinction between the two as used in the field of psychiatric medicine. It is urged that "ability" connotes the power "to form the idea which will precipitate action or inaction"; that a person is "able when he has the mental powers to know". On the other hand, it is claimed that "capacity" indicates that one not only has the ability, but also is so adjusted or adapted to the situation or circumstances that he can "put the knowledge to work, actively or inactively". Related to the present case, the contention is that the defendant in an abstract sense knows

that he was convicted and sentenced to death and is presently in a prison awaiting execution, but because of his emotional maladjustment or lack of adaptation he is unable to concretely appreciate how they relate to him; that he knows that he has an attorney but for the same reason is unable to confer with counsel in reference to his situation.

Counsel for appellant apparently infers this alleged misunderstanding on the part of the majority of the commission from the use of the word "able" rather than "capable" or "the capacity to" in framing certain questions in reference to the conduct of the appellant by the chairman of the commission. Assuming that this "clear distinction" between the terms "capacity" and "ability" does exist in the field of psychiatric medicine, although counsel does not cite any medical texts for this distinction, nor do any standard medical dictionaries consulted by us define the two terms as advocated by appellant, we refuse to conclude that the terminology used by the chairman evidences a conviction on the part of the majority that appellant was unable to relate the admitted knowledge of his status to the proceedings.

The order of the court, adopting the majority report of the commission, included specific findings ". . . 2. That the said Francis X. Ballem does comprehend his own condition *with reference* to such proceedings, and; . . . 4. That the said Francis X. Ballem is able to confer with his counsel *with reference* thereto." (Emphasis supplied). In view of these specific findings we cannot conclude that either the court or the commission misconstrued the term "capacity" as used in the 1956 amendment. This would seem particularly true where one of the majority members of the commission was a qualified psychiatrist who would be ex-

pected to be familiar with precise medical terminology, and would not be misled by any alleged inaccurate use of such terms in the interrogation.

An additional answer to counsel's semantic argument is that the amendment of 1956 reveals no intention by the Legislature that the word "capacity" is to have a technical meaning rather than its meaning according to common and approved usage as a synonym of "ability" (see the Statutory Construction Act of 1937, §33, 46 PS §533).

After a thorough hearing, and after a personal examination of the appellant, the majority of the commission found that the appellant was not insane within the meaning of that term as defined in the 1956 amendment. We are not persuaded that the adoption of this report by the court below was an abuse of discretion and we find no error of law committed by it.

It may be noted in passing that it is only where a criminal defendant has been convicted with penalty of death or sentenced accordingly that the test applied in this case is applicable. In all other situations under the Act of 1951 the test remains as prescribed under The Mental Health Act prior to its amendment in 1956. Moreover, as we held in the *Moon* case, under the Act prior to the amendment, which requires a less stringent standard for commitment than the provision in question, the defendant convicted of murder with the death penalty imposed can be affected with a mental disease—in that case dementia praecox of the paranoid type—and nevertheless not come within the statutory definition of mental illness, and thus not be a proper subject for commitment.

Order affirmed.