## Commonwealth ex rel. McGurrin, Appellant, v. Shovlin.

Submitted March 20, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

 opinion by Ho-
BAN, P. J. Relator appealed.

*William Joseph McGurrin,* appellant, in propria persona.

*Joseph J. Cimino,* District Attorney, for appellee.

OPINION PER CURIAM, June 20, 1967:
Order affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:
The petitioner in the instant case is William Joseph McGurrin, who is presently confined in the Farview State Hospital. In his handwritten petition, McGurrin requests that our court grant his petition for writ of habeas corpus on the ground that he was committed by the Court of Quarter Sessions of Lackawanna County at a time when he was not represented by counsel.

A brief review of the facts in this case is necessary for a full understanding of the question now presented before our court.

McGurrin was arrested by agents of the Federal Bureau of Investigation in September of 1963 for having written threatening letters to the late President John F. Kennedy. He was lodged by the federal authorities in the Lackawanna County prison pending disposition of these charges.

On September 16, 1963, the United States Marshal for the Middle District of Pennsylvania petitioned the Court of Quarter Sessions of Lackawanna County to inquire into the sanity of McGurrin pursuant to the provisions of The Mental Health Act of 1951, Act of

June 12, 1951, P. L. 533, §101 et seq., 50 P.S. §1071 et seq. On September 30, 1963, the said court appointed a commission of two psychiatrists and one attorney-at-law in accordance with §327 of the Act (50 P.S. §1202). A hearing was held at which McGurrin appeared without counsel. The commission found that McGurrin was mentally ill and of criminal tendencies, whereupon he was committed to the Farview State Hospital.

Immediately thereafter, the federal authorities dismissed the charges pending against McGurrin.

The main issue in this case is whether McGurrin's constitutional rights demanded the presence of counsel in the proceedings before the lunacy commission which resulted in a finding that he was mentally ill and of criminal tendencies. My research has disclosed that this question is one of first impression in the appellate courts of Pennsylvania. An excellent opinion on this precise question, however, was written by Judge GREENBERG of the Court of Common Pleas of Philadelphia County in the case of *Commonwealth ex rel. Miller v. Shovlin,* Court of Common Pleas No. 7, December Term, 1964, Bill No. 4228 (decided September 8, 1966). In this extensive and scholarly opinion Judge GREENBERG held that the right to counsel must be afforded to one appearing before a lunacy commission. I am in entire accord with Judge GREENBERG's conclusion for the reasons stated below. Accordingly, I must respectfully dissent from the Court's decision today which, *sub silentio,* denies McGurrin that right.

The primary argument suggested by the lower court in denying the petition was that: "Since there was not then, and is not now, any prosecution pending against McGurrin for violation of Pennsylvania law, any constitutional problems involved would not be within the jurisdiction of this Court." This argument, is, in effect, an extension of the holding of the Supreme Court

of Pennsylvania in *Commonwealth v. Bechtel*, 384 Pa. 184, 120 A. 2d 295 (1956), to the effect that a commission proceeding under The Mental Health Act "is not a criminal prosecution but a collateral proceeding to determine the mental health of the person involved for his benefit or for the benefit of the public or both." Though this language may have been supportable when written, I firmly believe that it has no validity in light of recent decisions of the Supreme Court of the United States.

Perhaps the most important case of the Supreme Court in this regard is *In the Matter of Gault*, 387 U.S. 1 (1967), decided only one month ago. In *Gault*, the courts of Arizona had decided that many of the constitutional rights assured to adults accused of crime could be denied juveniles similarly accused. In support of this position, the courts had held that a juvenile is not convicted, he is merely adjudged delinquent; he is not imprisoned in a penal institution but is sent, rather, to an "industrial school."

The Supreme Court pierced this argument with the following statement:

"Ultimately, however, we confront the reality of that portion of the juvenile court process with which we deal in this case. A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence—and of limited practical meaning—that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a building with white-washed walls, regimented routine and institutional laws. . . .' Instead of mother and father and sisters and brothers and friends and class-

mates, his world is peopled by guards, custodians, state employees, and 'delinquents' confined with him for anything from waywardness to rape and homicide.

"In view of this, it would be extraordinary if our Constitution did not require the procedural regularity and the exercise of care implied in the phrase 'due process' ". (pp. 27-8)

Later, in that same opinion, the Supreme Court addressed itself specifically to the right to counsel and stated:

"There is no material difference in this respect between adult and juvenile proceedings of the sort here involved. In adult proceedings, this contention has been foreclosed by decisions of this Court. A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child 'requires the guiding hand of counsel at every step in the proceedings against him.' Just as in Kent v. United States, supra, at 561-562, we indicated our agreement with the United States Court of Appeals for the District of Columbia Circuit that the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency, carrying with it the awesome prospect of incarceration in a state institution until the juvenile reaches the age of 21." (pp. 36-7)

These statements of the Supreme Court bear directly on the case before us. It is immaterial that McGurrin has not been convicted of any crime and that there is no criminal prosecution pending against him. Nor is it of any importance that he has been committed

to an institution designated as a hospital rather than a penal institution.

In point of fact, Farview State Hospital, to which McGurrin has been committed, is, in the words of §230(b) of The Mental Health Act, 50 P.S. §1140(b), "exclusively devoted to the care of patients convicted of crime or with criminal tendencies." The argument that McGurrin has not been formally convicted of a crime is no more persuasive than the argument in *Gault* that the juvenile is only adjudged "delinquent". Euphemistic terminology cannot obscure the fact that McGurrin has been thrown in the company of murderers, rapists and criminals of every other conceivable nature.

The Supreme Court of the United States, in *Gault*, was impressed by "the awesome prospect of incarceration" until the juvenile is twenty-one. Shall we not take even greater recognition of the fact that McGurrin faces the awesome prospect of *lifetime* incarceration? Shall we ignore the fact that McGurrin has been committed to Farview, because he has been found to have criminal tendencies?[1]

We cannot, nor should we, ignore the serious consequences of such proceedings simply by designating them as "collateral" rather than "criminal." McGurrin has been committed to an institution for the criminally insane without benefit of counsel. Labels cannot obscure the harsh nature of that commitment. Whether denominated collateral or criminal, such proceedings are surely subject to the due process clause of the Constitution.

Yet, though I rely on the theory so eloquently expressed in *Gault*, it is my firm conviction that this conclusion has long been implicit in the decisions of the

---

[1] Whether the term "criminal tendencies" is constitutionally vague is a question which might better be left for consideration in another case.

Supreme Court. In *State of Minnesota ex rel. Pearson v. Probate Court of Ramsay County, Minn.*, 309 U.S. 270 (1940), the Minnesota statute provided that the laws relating to the commitment of insane persons were to apply to persons having a psychopathic personality. A psychopathic personality was one who was irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons. The statute was not criminal in nature and was not brought into play by a criminal conviction. Those charged were specifically referred to as patients and were to be committed in a manner similar to those found insane.

In that case, the Supreme Court found that the statute did not, on its face, deny due process of law, because it provided for many safeguards *including the right to counsel.* The Court hastened to add however: "We fully recognize the danger of a deprivation of due process in proceedings dealing with persons charged with insanity or, as here, with a psychopathic personality as defined in the statute and the special importance of maintaining the basic interests of liberty in the class of cases where the law though 'fair on its face and impartial in appearance,' may be open to serious abuses in administration and courts may be imposed upon if the substantial rights of the persons charged are not adequately safeguarded at every stage of the proceedings."

Only recently, in *Specht v. Patterson,* 386 U.S. 605 (1967), which involved sentencing under the Colorado Sex Offenders Act, the Court again made reference to *Minnesota v. Probate Court,* supra, stating: "The case is therefore quite unlike the Minnesota statute we considered in Minnesota v. Probate Court . . . where in a proceeding to have a person adjudged a 'psychopathic personality' there was a hearing where he was represented by counsel and could compel the production of witnesses on his behalf. . . . None of these procedural

safeguards we have mentioned is present under Colorado's Sex Offenders Act. We therefore hold that it is deficient in due process as measured by the requirements of the Fourteenth Amendment."

The wisdom and purpose of a holding requiring the presence of counsel could not be better expressed than in the language of Judge GREENBERG in *Commonwealth ex rel. Miller v. Shovlin,* supra.

"[I]t would appear that the proceeding involved in the instant case is critically important so as to warrant the appointment of counsel to effectively assist the defendant at the hearing. Certainly, as was amply demonstrated in the facts in our case, he would lose his right under the Constitution to a speedy trial and the result of the proceeding could very well be his incarceration in a hospital for the criminally insane for a much longer period than the maximum sentence which he could have received had he been tried and convicted for the offense for which he was originally arrested. We do not mean to say that this result in a proper situation is unreasonable or unjust. What we do say is that if such a result is possible, it is a serious one and an accused should be represented by counsel at such a proceeding.

"It would be less than fair to hold that an accused is entitled to counsel at a trial, but not at a hearing where the results and consequences to him could be much more serious. This is especially true when the hearing concerns his mental capacity. In such a proceeding it is obvious that a man is even less able to cope with the so-called intricacies and technicalities than in the ordinary situation, and, thus, requires the assistance of counsel even more. The assistance of counsel at such a proceeding would in no way interfere with the purpose of the inquiry as stated by Justice BELL in Commonwealth v. Bechtel, supra. In all probability the participation of an attorney on behalf

of a defendant in such a proceeding would considerably assist in the process of informing the conscience of the Court. It would be expected that counsel who represents such a defendant would familiarize himself with the background history, traits, and general health of the subject and address his questions and cross-examination along those lines. This certainly would be helpful to the Court and in the best interest of the ascertainment of truth and the attainment of justice."

In summary, McGurrin has never been indicted for or convicted of any crime arising out of the original charge against him. Yet, he is serving an indeterminate commitment among criminals based on a finding that he is mentally ill with criminal tendencies pursuant to a hearing at which he was not represented by counsel. The proceedings before a lunacy commission may involve procedures and problems more complex and intricate than those which ordinarily arise at trial. To deny this individual the protection of counsel while granting it to individuals who are accused of minor crimes resulting in comparatively short sentences flies in the teeth of common sense and justice.[2]

---

[2] The Mental Health Act of 1951 remains in effect until July 1, 1968. I note in passing, however, that the new Mental Health & Mental Retardation Act of 1966 provides that, in the case of one charged with crime and detained in a penal institution, the court *may* "[a]ppoint an attorney to represent such person with reference to the petition." (50 P.S. §4408(b)). In light of my dissenting opinion today I seriously question whether the decision to appoint counsel in such a proceeding should be discretionary with the court. I further believe that my conclusion is buttressed by subsection (d) of §4408, which provides: "In making such order the court shall give due regard to the capacity of such person to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, to understand the nature of the punishment which might be inflicted upon him, to confer with his counsel with reference to such proceedings, to make a rational defense, and the probable effect of the trial on such person's physical and mental condition."

I would vacate the order of the lower court committing appellant to Farview State Hospital and direct the institution of new proceedings at which appellant would be represented by counsel.

MONTGOMERY, J., joins in this dissenting opinion.