## Commonwealth ex rel. McGurrin, Appellant, *v.* Shovlin.

Argued April 22, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

476

*Thomas P. Kennedy,* administrator, for appellant.

*Harry O'Neill, Jr.,* Assistant District Attorney, with him *Robert W. Munley,* Assistant District Attorney, and *Joseph J. Cimino,* District Attorney, for appellee.

*Lawrence T. Hoyle, Jr.,* with him *Julian E. Goldberg,* for American Civil Liberties Union, amicus curiae.

OPINION PER CURIAM, October 9, 1969:

Since 1963, William Joseph McGurrin has been confined in the Farview State Hospital at Waymart, Pennsylvania, under order of the Court of Quarter Sessions of Lackawanna County. The order of commitment was entered by the court following receipt of a report from a Sanity Commission[1] stating that McGurrin was men-

---

[1] McGurrin was arrested in 1963 by agents of the Federal Bureau of Investigation and charged with writing threatening letters to the President of the United States in violation of 18 U.S.C. 871. Pending disposition of this charge and while appellant was confined in the Lackawanna County Prison, the United States Marshal for the Middle District of Pennsylvania petitioned the Court of Quarter Sessions of Lackawanna County for the appointment

tally ill and of criminal tendencies. The Commission, consisting of two psychiatrists and one attorney, arrived at its conclusions following a hearing conducted in accordance with Art. III, Section 327 of the Act of 1951, supra, 50 P.S. §1202. At this hearing McGurrin was present but did not have the assistance of legal counsel.

In the present proceedings, McGurrin seeks his release from confinement by way of habeas corpus proceedings instituted in the Court of Common Pleas of Lackawanna County.[2] He contends that under the Sixth and Fourteenth Amendments to the Constitution of the United States, the presence of legal counsel on his behalf at the hearing before the Sanity Commission was an absolute requirement and since said hearing was conducted in the absence thereof, the proceedings were constitutionally invalid.

We will not and do not reach the constitutional question. It is the conclusion of the Court that in every case where a person is convicted of or charged with crime, and is thought to be mentally ill; and where a commission is appointed by the appropriate court to examine that person; and where a hearing is conducted before the court-appointed commission; then, in such cases, it is desirable and wise that such person be represented by legal counsel. Under our supervisory powers, we declare this to be the policy of the courts

---

of a Sanity Commission pursuant to The Mental Health Act of 1951, P. L. 533, §101 et seq., 50 P.S. §1071 et seq. The Act of 1951 has now been supplanted by the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, P. L. 6, 50 P.S. 4101 et seq.

[2] The habeas corpus court denied McGurrin relief and on appeal its order was affirmed by the Superior Court. Judge HOFFMAN filed a dissenting opinion in which Judge MONTGOMERY joined. See 210 Pa. Superior Ct. 295, 231 A. 2d 760 (1967). We granted allocatur.

in this Commonwealth and the course to be followed in such cases.

The orders of the Superior Court and the Court of Common Pleas of Lackawanna County are therefore vacated and the record is remanded to the court of original jurisdiction. If within 45 days proceedings are not instituted and conducted consonant with this opinion, the writ is directed to issue.

Mr. Justice MUSMANNO did not participate in the decision of this case.

CONCURRING OPINION BY MR. JUSTICE EAGEN:

While I wholeheartedly join in the declaration of policy enunciated in the Majority opinion, I wish to express some views on the constitutional question involved.

I cannot agree with the contention that the presence of counsel at a sanity commission hearing under the Pennsylvania Mental Health Act of 1951 is a constitutional right. A plethora of Pennsylvania case authority bears witness to the nature of a sanity commission hearing; those cases unhesitatingly characterize such hearings as civil in nature, not criminal or even adversary. As was stated by Mr. Justice CHIDSEY: "The rights of the defendant as an offender on trial for an offense are not here involved. The inquiry is not an adversary proceeding to determine the guilt or innocence of the defendant but a collateral proceeding entirely apart therefrom to inform the conscience of the court as to the appellant's mental condition—not merely whether defendant had a mental illness or disorder in the opinion of psychiatrists or medical witnesses but, assuming that some mental illness existed, whether it so lessened his capacity to use his customary self-control, judgment and discretion in the conduct of his affairs and social relations as to make it necessary or

advisable for him to be under care." *Commonwealth v. Moon,* 386 Pa. 205 (1956).

The nature of sanity commission hearings was also considered in *Commonwealth v. Bechtel,* 384 Pa. 184 (1956). In writing for the majority of this Court, Mr. Justice (now Chief Justice) BELL said: "This petition for a commission to determine petitioner's mental health and the proceedings thereunder is not a criminal prosecution but a collateral proceeding to determine the mental health of the person involved for his benefit or for the benefit of the public or both."

The reliance on *In Re Gault,* 387 U.S. 1, 87 S. Ct. 1428 (1967), to support the contention that the appellant had a constitutional right to counsel at his sanity commission hearing is ill-founded. In *Gault,* the Supreme Court held that a juvenile had a constitutional right to counsel at his juvenile hearing. The obvious reason for that conclusion was that a juvenile hearing determines the juvenile's guilt of a particular offense. Though not technically criminal, the essential nature and function of a juvenile court is to determine culpability. For that reason, it could not reasonably be maintained that the court could act in a role of parens patriae to protect the rights of the juvenile. In short, a juvenile hearing is adversary in nature. As was stated by Mr. Justice FORTAS in *Gault:* "There is no material difference in this respect between adult and juvenile proceedings of the sort here involved. In adult proceedings, this contention has been foreclosed by decisions of this Court. A proceeding where the issue is whether the child *will be found to be 'delinquent'* and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution." (Emphasis supplied.)

However, since a sanity hearing is not adversary, but merely inquires into the subject's mental health, there is no reason why the commission cannot act as

parens patriae to protect and adequately to represent the subject's best interests. The presence of counsel is, of course, desirable at such proceedings, but does not, in my opinion, rise to a constitutional right.

Mr. Justice JONES joins in this opinion.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur only in the result reached by the majority, but I disagree entirely with what is implied in the Court's per curiam opinion and explicit in the concurring opinion—that we need not allow appellant counsel at his sanity hearing as a constitutional matter. Certainly I am pleased that this Court has reached the right result. But I do not believe that it is enough to grant appellant the right of counsel on a "policy" or "good idea" basis. On that theory, perhaps others similarly situated will not fare as well, if the majority concludes that its grace should not be continued. That is a decision which I do not believe this Court would be entitled to make. In my view, the long overdue relief granted today is not revocable as a matter of judicial policy, grace or discretion, but rather is predicated on a fundamental and absolute constitutional right. I therefore find it necessary to express my views as to why appellant is entitled, as a matter of federal constitutional law, to the assistance of counsel in this case.

Appellant was arrested in 1963 by agents of the Federal Bureau of Investigation and charged with writing threatening letters to the President of the United States in violation of 18 U.S.C. 871. Pending disposition of this charge and while appellant was confined in the Lackawanna County prison, the United States Marshal for the Middle District of Pennsylvania petitioned the Court of Quarter Sessions of Lackawanna County for the appointment of a sanity commission pursuant to The Mental Health Act of 1951,

Act of June 12, 1951, P. L. 533, §101 *et seq.*, 50 P.S. §1071 *et seq.* On September 30, 1963, a commission was appointed.

The commission found that appellant was mentally ill with criminal tendencies, and the court ordered him committed to Farview State Hospital. The Federal District Court, on motion of the United States Attorney, dismissed the complaint against appellant because the federal authorities had determined appellant to be mentally incompetent. At no time during these commitment proceedings was appellant represented by counsel.

Subsequently, while confined at Farview, appellant filed with the Court of Common Pleas of Lackawanna County papers which were treated as a petition for a writ of habeas corpus. The petition was dismissed, and the Superior Court affirmed per curiam, Judge HOFFMAN dissenting in an opinion which Judge MONTGOMERY joined. We granted allocatur to determine whether appellant was constitutionally entitled to be represented by counsel at his sanity hearing.

At the outset, it is necessary to consider whether counsel is essential at the sanity commission hearing even though the order committing appellant technically was issued by the court, not by the sanity commission. While we have held that under the criminal commitment procedures of the Act of 1951, 50 P.S. §§1224, 1225, the commission's findings are merely "advisory," (although they may not be arbitrarily rejected by the court), *Commonwealth v. Ballem,* 391 Pa. 626, 636, 139 A. 2d 534, 539 (1958), and although the civil commitment provision, 50 P.S. §1203, under which appellant was committed also leaves the ultimate determination to the court, this is not conclusive. There is no doubt at all that the commission's findings will be given great weight by the committing judge. The sanity hearing is where most data is collected and where ex-

pert opinion is given; the court proceeding under these circumstances is likely to be little more than a formality. In effect the commission hearing is a critical stage, cf. *United States v. Wade,* 388 U.S. 218, 224, 87 S. Ct. 1926, 1931 (1967), and it is there that appellant's liberty and future are actually at stake. Thus whatever constitutional protections to which appellant may be entitled attached at the sanity commission hearing.

The Commonwealth, like the defense, believing this case to involve solely a constitutional issue essentially argues only that appellant is not entitled to counsel at a sanity commission hearing because the hearing is a "civil," not "criminal," proceeding. This argument was made and rejected in the juvenile court area by the Supreme Court of the United States in *In Re Gault,* 387 U.S. 1, 87 S. Ct. 1428 (1967). Prior to *Gault,* Pennsylvania had adopted the *parens patriae* doctrine to hold juvenile proceedings to be non-criminal in *Holmes Appeal,* 379 Pa. 599, 109 A. 2d 523 (1954). The Supreme Court of the United States refused to follow this reasoning, quoting instead the dissenting opinion of Mr. Justice MUSMANNO in *Holmes* that the juvenile is placed in "a building with whitewashed walls, regimented routine and institutional hours. . . ." 387 U.S. at 27, 87 S. Ct. at 1443, quoting 379 Pa. at 616, 109 A. 2d at 530. The same conditions—"bars, guards, and routine"—form a substantial part of the atmosphere at Farview, the institution to which appellant was sent, and staff members even have claimed that these factors are part of the rehabilitative process there. 110 U. Pa. L. Rev. 78, 86 (1961).[1] In

---

[1] An individual's criminal record will likely effect his treatment in the institution, and if the crime is sufficiently severe, will greatly decrease his chance for release. Further, the time spent in Farview will be considered part of the individual's punishment

the face of this, *Gault* shows that it simply is not enough to maintain that a proceeding is not "criminal" in order to deprive an individual of constitutionally guaranteed protections where his liberty is at stake.

The decision that constitutional due process protections could attach at a commitment proceeding "whether denominated civil or criminal" was made before *Gault* in *Specht v. Patterson,* 386 U.S. 605, 608, 87 S. Ct. 1209, 1211 (1967), and had been foreshadowed much earlier in *Minnesota ex rel. Pearson v. Probate Court of Ramsey County,* 309 U.S. 270, 275-76, 60 S. Ct. 523, 526 (1940) (by implication).[2] To institutionalize appellant for a time that may be the equivalent of a life sentence without giving him so fundamental a right as the assistance of counsel cannot be permitted.

The role which counsel can play at a sanity com-

---

in determining whether he should be tried if released. 110 U. Pa. L. Rev. 78, 94, 104 (1961).

[2] *Specht* involved a Colorado procedure under which petitioner was convicted of indecent liberties under one statute and was then given an indeterminate one-day-to-life term under the Sex Offenders Act. Colo. Rev. Stat. Ann. §§39-1 to 10 (1963). The Sex Offenders Act covered persons convicted of sex offenses who in the opinion of the trial court constituted a "threat of bodily harm to members of the public, or is an habitual offender and mentally ill." §19-1. The statute utilized a procedure by which petitioner was examined and a report was prepared to be used by the trial judge prior to sentencing. However there was no hearing, no right of confrontation, etc.

The Court held this procedure to be constitutionally impermissible. The earlier *Pearson* case was distinguished because there a person adjudged to have a "psychopathic personality" received a "hearing where he was represented by counsel and could compel the production of witnesses on his behalf." 386 U.S. at 610, 87 S. Ct. at 1213. Although the Minnesota procedure in *Pearson* was neither criminal in nature nor tied to a criminal conviction, neither the Court in *Pearson* nor in *Specht* considered this to be controlling.

mission hearing should not be underestimated. The argument rejected in *Gault* that the child could be adequately represented by the probation officer and by the court itself, 387 U.S. at 35-36, 87 S. Ct. at 1448, is equally specious here. Members of the sanity commission and the judge who evaluates the commission's report have functions that are separate and distinct from those of an individual's own counsel, and cannot give an individual the full assistance and protection which his own attorney could provide. See Note, "The Right to Counsel at Civil Competency Proceedings," 40 Temp. L. Q. 381, 387-90 (1967).

Initially counsel is necessary in a sanity investigation situation to explain the proceedings to the individual and to help the individual make initial communications with the authorities.[3] From the very beginning, counsel can also insure that the applicable state procedures, which may on their face provide an individual with a fair hearing, are being followed.[4]

---

[3] Commentators are able to cite an extreme case to emphasize the need for counsel from the very outset of proceedings. See Note, 40 Temp. L. Q. 381 (1967); Kutner, "The Illusion of Due Process in Commitment Proceedings," 57 N.W.L. Rev. 383 (1962). The case involved the Duzynskis, Polish emigrants who suspected the janitor of their Chicago apartment building of stealing money from their apartment. The janitor, upon being confronted by Mrs. Duzynski, called the police and on their arrival told them that both Mr. and Mrs. Duzynski were insane. The Duzynskis were then seized, handcuffed and taken to the mental health clinic where, unable to answer questions in English, they were pronounced insane and committed. Six weeks later, still not comprehending why he was incarcerated, Mr. Duzynski committed suicide and only then was an investigation held that led to Mrs. Duzynski's release.

[4] Although Illinois has a series of safeguards to protect against improper institutionalization, a study there has disclosed that certificates of insanity frequently are issued after-the-fact and without proper examination; individuals in effect must prove themselves sane; patients are frequently so heavily sedated at the court

At a sanity hearing, just as at a criminal trial, one of counsel's most essential functions is as a fact-finder and developer. This is particularly important where his client is inarticulate, frightened, or both. Even absent this difficulty, counsel is still necessary to present a coherent picture of the *legally relevant* facts in the case. Closely related to this is the potential need for counsel to cross-examine witnesses so as to present a complete picture of his client's condition. Sanity hearings and determinations present legal as well as medical problems, Kutner, "The Illusion of Due Process in Commitment Proceedings," 57 N.W.L. Rev. 383, 386-89 (1962), and legal questions rarely can be decided by one sure answer. An individual needs the assistance of counsel in order to insure that all the evidence in his best interest is presented, and to guarantee that all the evidence will be used toward a determination that is relevant to the proper legal standards for commitment.[5] The ultimate determination will

---

hearing that they are unable to defend themselves; and not only are persons not generally informed of their legal rights, but workers who do so inform them are generally reprimanded or dismissed. Kutner, supra at 384-85. While these findings are directly relevant only to Chicago, similar abuses have been found in numerous other states, *id.* at 386, and in any event the potential for abuse is a danger that exists everywhere.

[5] In *United States v. Driscoll*, 399 F. 2d 135, 138, (2d Cir. 1968), the Court held defendant to be entitled to the assistance of counsel during a psychiatric examination that was used at trial to prove that defendant was sane at the time of the commission of the offenses. The Court emphasized that appellant was entitled to confer with counsel so that he could "fully and intelligently respond to the doctor's questions." *Id.* at 138. The Court rejected the government's argument that defendant was merely seeking a "constitutional right to slant his answers," noting that although defendant might give different answers if given notice that they could be used against him and if permitted to consult with his attorney, this does not necessarily indicate dishonesty. Rather, the Court believed that with the help of a lawyer, defendant's answers "might well have

technically not be whether the individual is "insane" but whether he is able "to adapt to the society of which he is a part. . . . The social controls, including the individual's ability to work within a complex human relationship, are usually the first to suffer deterioration. This failure may result in the inability of the individual to care for himself, or it may be expressed in anti-social conduct directed at others. In either case, the problems are no longer medical, but have social and legal consequences." Ross, "Commitment of the Mentally Ill," 57 Mich. L. Rev. 945, 954 (1959).

Ultimately it must be remembered that while in a criminal trial, counsel's primary function is to secure the release of his client, this is not necessarily true in a sanity hearing. Representation is essential, even if an individual's commitment is a foregone conclusion, in order to insure that the individual will receive the *proper treatment for his case,* and to work for the improvement of improper conditions. See 40 Temp. L. Q., supra, at 389.

The importance of counsel at a sanity hearing is confirmed by the fact that statutory provisions for representation exist in most states.[6] The Pennsylvania Mental Health and Mental Retardation Act of 1966 also envisions the presence of counsel at sanity commission proceedings. Act of October 20, 1966, Special Sess. No. 3, P. L. 6, §408, 50 P.S. §4408 (Supp. 1967).[7]

---

been fuller, had defendant himself focused on his state of mind five years before." *Id.*

[6] In its excellent *amicus* brief, the American Civil Liberties Union points out that forty-two jurisdictions make some provision for assistance of counsel. Appointment is mandatory in twenty-two jurisdictions; in six others it is mandatory upon request.

[7] Section 4408(b) makes appointment of counsel in a criminal commitment proceeding optional with the court. Section 4408(d) obviously anticipates counsel's presence, since one of the factors

Even were we to conclude that the Commonwealth is not obligated to allow counsel at a sanity hearing, once that privilege is allowed to some, it cannot be denied to others because of their indigency or lack of knowledge. See, e.g., *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963); *Griffin v. Illinois,* 351 U.S. 12, 76 S. Ct. 585 (1956). And since I believe that the Commonwealth is constitutionally compelled to allow counsel at a sanity hearing, in my view it must also provide attorneys for those who cannot afford them. See *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963).

In summary, I believe that the result reached today is constitutionally compelled, and I would not diminish appellant's constitutional rights by basing them on the supervisory powers of this Court.

Mr. Justice O'BRIEN joins in this opinion.

———

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent from the newly established *mandated* (and apparently retroactive) policy that in every case where a person is convicted of or charged with crime and is thought to be mentally ill and where a commission is appointed by the appropriate Court to examine that person, he is entitled to be represented by legal counsel.

The majority Opinion (1) alters the heretofore well established law of Pennsylvania and (2) overrules all the recent decisions of this Court and (3) in practical effect changes a civil proceeding which is primarily for the benefit of a person who is actually or possibly mentally ill into a criminal proceeding. Every Court must, of course, obey the decisions of the Supreme

———

which the court is to consider in drafting its order is the individual's ability "to confer with his counsel with reference to such proceedings."

Court of the United States which are directly in point, but *I strongly object to a State Court extending, in reliance upon "implication,"* any decisions of the Supreme Court in the field of criminal law which further reduce the protection which the Constitution ordains for law-abiding citizens. The danger and foolishness of a policy of a State Court *extending decisions* of the Supreme Court of the United States in the field of criminal law *and the date they take effect* is apparent from the analysis and review of prior decisions of that Court in the Opinion of Chief Justice WARREN in *Jenkins v. Delaware,* 395 U.S. 213 (37 U.S.L.W. 4458 (1969)).

I repeat, an advisory Sanity hearing and recommendation is not, and until today never has been, a criminal or adversary proceeding, and I agree with Justice EAGEN that *In Re Gault,* 387 U.S. 1 (involving the guilt and possible imprisonment of juveniles) is distinguishable for the reasons set forth in his Opinion. Moreover, Justice ROBERTS in holding that a Sanity hearing is a "critical" stage like *United States v. Wade,* 388 U.S. 218, and therefore an attorney in such proceedings is Constitutionally mandated, *goes far beyond any decision of the Supreme Court* or of this Court *and in practical effect expunges the clear language of The Mental Health Act of 1951,* that the findings and recommendations of the Commission are merely advisory to the Court.

In *Commonwealth v. Ballem,* 391 Pa. 626, 139 A. 2d 534, Justice CHIDSEY, speaking for a unanimous Court, held (1) that a sanity hearing is not a criminal proceeding or an adversary proceeding to determine appellant's guilt or innocence, but a collateral proceeding entirely apart therefrom to inform the conscience of the Court as to the appellant's mental condition, and (2) that the report or recommendation of the commission is only advisory to the Court.

.

In *Commonwealth v. Bechtel*, 384 Pa. 184, 120 A. 2d 295, the Court in an Opinion by the present Chief Justice, with Justice MUSMANNO writing a concurring and dissenting Opinion, pertinently said (pages 190-191): "This petition for a commission to determine petitioner's mental health and the proceedings thereunder *is not a criminal prosecution** but a collateral proceeding to determine the mental health of the person involved *for his benefit or for the benefit of the public or both*. Cf. Com. v. Patskin, 375 Pa. 368, 100 A. 2d 472; Com. v. Iacobino, 319 Pa. 65, 178 A. 823; Com. v. Scovern, 292 Pa. 26, 140 A. 611. Inquiries into the mental health or sanity of a prisoner whether made before trial or after conviction and before sentence are 'to inform the conscience of the judge'. Com. v. Iacobino, 319 Pa., supra; Com. v. Scovern, 292 Pa., supra. Where an inquiry is made into the mental illness or sanity of a defendant the purpose of which is solely to inform the conscience of the Court, the accused does not have under the Constitution a right to a trial of such issue by a jury. Cf. Com. v. Iacobino, 319 Pa., supra; Com. v. Patskin, 375 Pa., supra." Accord: *Commonwealth v. Moon*, 386 Pa. 205, 125 A. 2d 594. Once again, and in recent years, over and over again the majority force the Bench and Bar and the Public to wonder "Is stare decisis upon which the House of Law was built and maintained as a beacon light for the people and for public officials and for Courts of Justice 'one with Nineveh and Tyre,' or can it be restored so that all people, including public officials, will know their rights, their powers, their duties and their liabilities?"** Is it any wonder that litigation is

---

\* Italics throughout, ours.

\*\* Stare decisis is not as immutable as the laws of the Medes and the Persians but is subject to several exceptions, none of which is here applicable. See *Michael v. Hahnemann M.C. and Hospital*, 404 Pa. 424, 438-439, 172 A. 2d 769; and *Flagiello v. Pennsylvania*

increasing by leaps and bounds and is swamping the Courts?

The majority, we repeat, blindly ignore or blandly forget that a man is placed in a mental hospital primarily for his benefit and care, and at times for the protection of the public. In further support of our position, a man who is insane cannot be convicted of any crime. *Commonwealth v. Scovern*, 292 Pa. 26, 29, 140 A. 611; *Commonwealth v. Moon*, 383 Pa. 18, 23, 117 A. 2d 96; *Commonwealth v. Patskin*, 375 Pa. 368, 100 A. 2d 472; *Commonwealth ex rel. Smith v. Ashe*, 364 Pa. 93, 116, 71 A. 2d 107; *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 495, 227 A. 2d 159.

Moreover, if a person is really insane or mentally ill or mentally incompetent within the meaning of the Mental Health Act, he cannot even be subjected to trial. In *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa., supra, a unanimous Court said (pages 494-495): "There can be no doubt that, if Hilberry were mentally incompetent at the time he entered his plea, the same should be set aside and declared of no effect. See Commonwealth v. Moon, 383 Pa. 18, 117 A. 2d 96 (1955). And the test to be applied in determining the legal sufficiency of his mental capacity to stand trial, or enter a plea at the time involved, is not the M'Naghten 'right or wrong' test, but rather *his ability to comprehend his position as one accused of murder and to cooperate with his counsel in making a rational defense.* See Commonwealth v. Moon, supra, and Commonwealth ex rel. Hilberry v. Maroney, supra, at 544. Or stated another way, did he have sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and have a rational as well as a factual understanding of

*Hospital*, 417 Pa. 486, 528-529, 208 A. 2d 193, and cases cited therein.

the proceedings against him? See Dusky v. United States, 362 U.S. 402 (1960). Otherwise, the proceedings would lack due process: Bishop v. United States, 350 U.S. 961 (1956). Moreover, if he lost his senses subsequent to the plea but before the judgment, the sentence could not validly be imposed until after his recovery. See Commonwealth v. Ragone, 317 Pa. 113, 176 A. 454 (1935)."

If, as the majority hold, an attorney is *mandated* (1) every time an accused or a criminal (a) is suspected of being insane or (b) wants to be released from an insane hospital or from a mental institution *and to stand trial for a crime* which he has allegedly committed; and (2) by necessary implication, every time any person objects to being placed in a mental institution or wishes to be released therefrom, where are the Courts going to find sufficient competent lawyers (if the person alleges he is indigent), and where are the tremendously overburdened taxpayers going to get the money to pay for all these required lawyers;* and isn't it clear that it will greatly and unnecessarily increase litigation which is presently swamping many of our Courts?

Furthermore, we repeat, the majority cavalierly and in practical effect ignore the fact that (1) the report and findings and recommendations of a mental health commission are, under the Act, *advisory only*; and (2) if a Judge is in doubt and if in the exercise of a sound discretion he deems it wise or necessary, he can—with-

---

* In this case and in similar cases, I believe that when an inmate or a suspect or an habitual criminal wants to be released from a criminal hospital or mental institution (a) because he naturally wants to be released, or (b) in order to stand trial for a crime of which he is accused, it would be only human for his lawyer to use his best efforts to carry out the wishes of his client, even though the lawyer believes or knows that his client is unfit to be restored to Society or to stand trial.

out this new Court *mandate*—appoint an attorney to represent the person before the Sanity Commission or order a rehearing with counsel. The chances are about 99% that every Judge will lean over backward to protect from unjust incarceration, and more importantly from trial or sentence, a person who is really mentally ill or not competent or able to adequately understand his position or his alleged crime and to cooperate with his counsel in making or aiding him in making a rational and appropriate defense. In this class of case, we should be more realistic and have more confidence and trust in our Judges.