Commonwealth *v.* Klinger, Appellant.

Submitted September 11, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Myron M. Moskowitz,* for appellant.

*F. W. Rice,* First Assistant District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, November 12, 1969 :
Judgment of sentence and order affirmed.

---

DISSENTING OPINION BY HOFFMAN, J. :

In 1955, appellant pleaded guilty to an indictment charging him with rape, before the Court of Quarter Sessions (now the Court of Common Pleas, Criminal Division) of Northumberland County. He was sentenced to one day to life under the Barr-Walker Act, Act of January 8, 1952, P. L. (1951) 1851. Pursuant to that sentence, he was incarcerated at the Farview State Hospital at Waymart.

In 1968, the Barr-Walker Act having been held constitutionally invalid,[1] the Court of Quarter Sessions vacated sentence. Pursuant to the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, Special Sess. No. 3, P. L. 96, art. IV, §410, 50 P.S. §4410, the Court deferred resentencing and ordered appellant examined for mental disability at the Danville State Hospital.[2]

---

[1] *Commonwealth v. Dooley,* 209 Pa. Superior Ct. 519, 232 A. 2d 45 (1967).

[2] §410 of the Act provides, in part: "(a) Whenever any person is adjudged guilty of a crime punishable by sentence to a penal or correctional institution, the trial court may defer sentence and order an examination of the defendant for mental disability to guide it in determining his disposition. Such action may be taken on the court's initiative, or on the application of the district attorney, the defendant, or his counsel or other person acting in his interest. (b) The court shall order the defendant's examination at a designated facility or otherwise, by two physicians. The director or physicians shall make a written report of the findings to the court within sixty days of the date of the order, and the

Danville found appellant "alert, oriented and cooperative. He showed no evidence of perceptual distortions such as hallucinations. His stream of though[t] was logical, relevant and coherent. There was no evidence of any abnormal behavior . . ." Appellant was given physical and neurological examinations and was found to be "within normal limits." His psychological tests placed him in the "mildly mentally retarded group" or the "dull normal group." Appellant's Rorschach test revealed "several schizophrenic-like features but the testing as a whole was not 'typically' schizophrenic." The "schizophrenic-like features" were believed "due to his limited intellectual, educational and cultural background." The psychologist was unable "to find any clear-cut evidence of psychosis."

The Danville report concluded as follows: "This, as you might imagine, leaves us with somewhat of a dilemma. Clinically we are unable to document the impression gained at the Farview State Hospital of a schizophrenic reaction and also there is not any conclusive evidence of this found in the psychological testing. However, regardless of the fact that our Medical Staff does not agree with the statistical diagnosis on this patient, we are agreed that his limited intellectual endowment, his marked psychosexual difficulties, his limited educational back[ground] and his deprived social environment make it likely that this patient may impulsively repeat the act for which he was originally

report shall be available to the Attorney for the Commonwealth, and counsel for the defendant. (c) Upon receipt of a report that the defendant is so mentally disabled that he be committed to a facility, the court may so commit him in lieu of sentence for such period, as may be appropriate until further order of the court; but in no event for a period longer than the maximum sentence authorized for the crime of which he was adjudged guilty. If, upon expiration of such period, further care of such person is necessary, the director shall initiate appropriate proceedings under this act as if no crime had been involved."

508

incarcerated. We, therefore, agree with the opinion of the Medical Staff of the Farview State Hospital that this man continues to be in need of maximum security hospitalization."

Acting pursuant to the Danville report, the Court ordered appellant "committed to the Farview State Hospital . . . for such period as may be appropriate until further Order of the Court, but in no event for a period that would extend beyond July 29, 1970." This appeal followed.

Appellant argues that since the Danville report was inconclusive with respect to his mental condition, he should have been permitted to confront and cross-examine those people who thought he needed "maximum security hospitalization" at Farview State Hospital. He further argues that all committees under §410 are constitutionally entitled to confront and cross-examine those who recommend commitment.

A decision by the lower court to commit under §410 is reviewable by appeal to this Court. Id. §410(e), 50 P.S. §4410(e). We have construed such power in the past to allow us to determine whether the lower court has abused its discretion or committed an error of law. See Commonwealth v. Moon, 386 Pa. 205, 125 A. 2d 594 (1956); Commonwealth v. Ballem, 391 Pa. 626, 139 A. 2d 534 (1958). Where insufficient facts have appeared on the record to justify the lower court's action, we have remanded the case for further proceedings. See Commonwealth v. Baldassarre, 399 Pa. 411, 160 A. 2d 461 (1960).

The facts of this case bring it within the above line of cases. The Danville report, as a whole, was favorable to appellant. The staff that had examined him could find nothing to support the diagnosis they had received from Farview State Hospital. The Farview report, on the other hand, was not included in the record, so that we have no report to compare with

that of Danville.[3] Danville's final recommendation, accordingly, can be accorded little weight. See *Commonwealth v. Patskin*, 375 Pa. 368, 375-376, 100 A. 2d 472 (1953); *Commonwealth v. Gossard*, 385 Pa. 312, 321, 123 A. 2d 258 (1956).

The commitment order of the lower court, having been based upon the Danville report without any further proceedings, cannot stand. Given the nature of their report, the Danville physicians should have been called so they could have been examined by the court, the district attorney, and appellant's counsel. Moreover, had they continued to deny the existence of any psychosis, it would have become necessary to call the physicians from Farview for examination. The facts of the case require, therefore, that the record be remanded for further proceedings.

Moreover, appellant's constitutional argument is not necessarily unmeritorious. In 1955, conviction for rape subjected one to a maximum penal incarceration of fifteen years. Act of June 24, 1939, P. L. 872, §721.[4] Had appellant been sentenced thereunder, the harshest sentence he could have received would have been seven-and-one-half to fifteen years. Act of June 19, 1911, P. L. 1055, §6, as amended, 19 P.S. §1057. Appellant was not sentenced thereunder, however, but was subjected to the Barr-Walker Act and then to the Mental Health and Mental Retardation Act of 1966. Under both Acts, appellant lost his right to a minimum sentence. Moreover, he effectively lost his right to an early parole. See *Commonwealth v. Daniel*, 430 Pa.

---

[3] There is no indication from the record when the Farview report was made, whether in 1955, at the time of the original commitment or more recently. This fact is vital to determining whether the report continues to have any validity.

[4] The rape statute has recently been rewritten by the legislature and the possible length of incarceration increased. Act of May 12, 1966, Special Sess. No. 3, P. L. 1, §1, 18 P.S. §4721 (Supp. 1969).

642, 647 n.*, 243 A. 2d 400 (1968). In their place, appellant was subjected to the possibility and, in his case, the reality of fifteen years at Farview State Hospital.[5]

Farview State Hospital has recently been described as follows: "If a patient received adequate and effective treatment at Farview, . . . extended incarceration might be justified. But the penal atmosphere of Farview tends to hinder recovery. . . . When they enter Farview, they come into contact with persons who have been incarcerated there for thirty years. They soon realize that almost as many people leave Farview in a pine box as are formally discharged. They begin to feel that the state will keep them secreted at Farview, far away from their homes and friends, for the rest of their lives. They also realize that little or no treatment is available. Finally, insult is added to injury. Sections 501 and 502 of the Mental Health and Mental Retardation Act of 1966 impose liability upon them and those who have a legal duty of support for costs they incur." Comment, Commitment to Farview: Incompetency to Stand Trial in Pennsylvania, 117 U. Pa. L. Rev. 1164, 1167 (1969). Also see id. at 1170-71 n. 37; Note, Hospitalization of Mentally Ill Criminals, 110 U. Pa. L. Rev. 78 (1961) (a general critique of Farview).

These conditions at Farview have recently received judicial recognition. "It is perfectly clear that appellant is being sent to an institution that has the trappings of a prison. The time he spends there, his potential for release, and the possibility of further incarceration are all influenced by the widely held opinion that his tenure in the institution is at least to some

---

[5] After his fifteen years at Farview pursuant to §410 and its predecessor, appellant may yet be civilly committed indefinitely. Mental Health and Mental Retardation Act of 1966 §406, 50 P.S. §4406.

extent 'punishment.'" *Commonwealth v. Bruno*, 435 Pa. 200, 226, 255 A. 2d 519 (1969) (dissenting opinion). Also see *Commonwealth ex rel. McGurrin v. Shovlin*, 210 Pa. Superior Ct. 295, 231 A. 2d 760 (1967) (dissenting opinion), rev'd 435 Pa. 474, 257 A. 2d 902 (1969).

Because of appellant's substantial loss of rights and because of the conditions he is subjected to at Farview, he should be accorded certain procedural guarantees at the stage they may be sanctioned, i.e., at the commitment hearing. See *Specht v. Patterson*, 386 U.S. 605, 87 S. Ct. 1209 (1967); *Gerchman v. Maroney*, 355 F. 2d 302 (3rd Cir. 1966); *Commonwealth v. Dooley*, supra; *Commonwealth v. Pifer*, 215 Pa. Superior Ct. 125, 256 A. 2d 878 (1969) (dissenting opinion). Cf. *Commonwealth ex rel. Tate v. Shovlin*, 205 Pa. Superior Ct. 370, 208 A. 2d 924 (1965). Under such circumstances, when the only evidence is a written report, composed by absent and unknown persons, the committee is denied a fair hearing. Appellant should have been permitted to confront and cross-examine the physicians at Danville and, if necessary, those at Farview. If he is not "mentally ill" and a proper subject for commitment at Farview, then appellant should be in prison.[6]

I would reverse the order of the lower court and remand the record to that court for proceedings consistent with this opinion.

SPAULDING, J., joins in this dissenting opinion.

---

[6] The record indicates that there are outstanding bills of indictment against appellant in both Schuylkill and Dauphin Counties, to which he may have pleaded guilty. Should appellant be found not "mentally ill" and should he be sent back to prison on the Northumberland County bill, it is not likely, in view of the above bills, that he will soon be released.